**In the United States District Court
for the Southern District of Georgia
Brunswick Division**

FILED
U.S. DIST. COURT
BRUNSWICK DIV.
2005 NOV -3  P 12: 38
CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| JOHN F. ARMSTRONG, SAMUEL BURTON, MIKE KARAMOLENGOS, ROBIN MATZ, ROBERT PEARSON, MATTHEW WOODARD, ALFRED REESE, STEVEN SNIPES, JASON JOHNSON, JOHN B. WELLS, and TRANSPORT INSURANCE COMPANY/CNA, | : : : : : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| DURANGO GEORGIA PAPER COMPANY, | : : | |
| Defendant. | : | NO. CV202-085 |

### O R D E R

Plaintiffs, John F. Armstrong, Samuel Burton, Mike Karamolengos, Robin Matz, Robert Pearson (also known as Stephen Pearson), Matthew Woodard, Alfred Reese, Steven Snipes, Jason Johnson, John B. Wells, and Transport Insurance Company/CNA, filed the above captioned case against Durango Georgia Paper Company ("Durango").

AO 72A
(Rev. 8/82)

Presently before the Court is Plaintiffs' motion to enforce a settlement agreement.[1] Because there was no meeting of the minds regarding the purported contract, the motion will be **DENIED**.

## BACKGROUND

In 2000, Durango operated a paper mill in St. Marys, Georgia. Plaintiffs, who were independent contractors working at the mill, allege that they were injured as the result of exposure to chlorine gas and chlorine dioxide gas at Durango in two separate gassing incidents that year.

In 2002, Plaintiffs filed suit, asserting negligence claims under Georgia law. Subsequently, Durango filed for bankruptcy protection under Chapter 11, and Plaintiffs' lawsuit was automatically stayed. On March 2, 2004, the Bankruptcy Court for the Southern District of Georgia granted Plaintiffs' motion for relief from the automatic stay to go forward in the tort suit "to the extent of insurance proceeds if any." See Dkt. No. 144 at 8.

American International Specialty Lines Insurance Company ("AISLIC") is Durango's liability insurer. After Bankruptcy

---

[1] Snipes has not joined his co-Plaintiffs' motion.

2

Judge Lamar W. Davis, Jr., modified the automatic stay, AISLIC funded Durango's defense under a reservation of rights, which is a notice from the insurer that it may dispute coverage or attempt to apply an exclusion under the insurance policy to defeat an insured's claim.

During 2004 and 2005, the parties conducted discovery to prepare for trial in the instant case. Among other filings of record, Durango filed a motion for summary judgment and a motion in limine.[2] On June 23, 2005, a proposed pretrial order was due. However, on June 9, 2005, AISLIC sent a letter to Plaintiffs' attorneys and the Bankruptcy Trustee administering the Durango estate, informing the recipients of the letter that AISLIC was disclaiming coverage under the insurance policy because it asserted that the gassing incidents had not been properly disclosed to it when Durango renewed the insurance policy.

On June 17, 2005, a status conference was held, and the Court rejected Durango's suggestion that the bankruptcy stay had been reimposed in light of AISLIC's denial of coverage. See Dkt. No. 150.

---

[2] Said motions were denied. See Dkt. Nos. 168 & 128.

3

Although the terms of Bankruptcy Judge Davis' order lifted the stay only to the extent that insurance proceeds existed, the Bankruptcy Trustee administering Durango's estate was under the impression that it had a duty to undertake Durango's defense in the tort suit after AISLIC disclaimed responsibility. Consequently, the Trustee hired the law firm that had been representing Durango's interests before AISLIC withdrew from the case to complete the pretrial order.

Meanwhile, AISLIC filed a motion in the Bankruptcy Court seeking a reimposition of the automatic stay. The Trustee had no interest in incurring further legal fees in defense of the tort action, so it entered into negotiations with Plaintiffs to withdraw from defending the case. On August 2, 2005, Plaintiffs' attorneys and the Trustee's lawyers discussed a compromise. In exchange for the Trustee's agreement to concede liability, Plaintiffs stated that they were willing to disclaim any intention, or ability, to proceed against the bankrupt estate as a judgment creditor.

On August 10, 2005, an attorney for Durango's estate emailed a draft settlement agreement to Plaintiffs' lawyers. In the email, the Trustee's lawyer expressed his desire to announce the settlement in an upcoming hearing before the

Bankruptcy Court, if Plaintiffs were willing to sign the contracts.

The next morning, the Bankruptcy Court for the Southern District of Georgia held a hearing on AISLIC's motion to reinstate the bankruptcy stay. The Trustee opposed AISLIC's motion, and explained the compromise negotiations that had taken place in the previous days with the Plaintiffs. However, because Plaintiffs had not yet agreed to terms with the Trustee, the Trustee's lawyer was left to describe the tentative compromise and what he believed would happen under the agreement to be reached between the parties.

After hearing from AISLIC, the Trustee, and the Plaintiffs, the Bankruptcy Court denied AILIC's motion. After the hearing, Plaintiffs' attorneys made several substantive changes to the agreement and submitted their draft proposal to the Bankruptcy Trustee for review and approval. However, the Trustee did not agree to be bound by the terms proposed by Plaintiffs.

Subsequently, AISLIC approached the Bankruptcy Trustee to resume its defense of the underlying tort action under the reservation of rights.

AO 72A
(Rev. 8/82)

**DISCUSSION**

Plaintiffs argue that they reached an agreement "in principle" with the Trustee and seek the enforcement of the purported contract.  Yet, the most basic principle underlying the common law of contracts is that an agreement may not be enforced absent a meeting of the minds.  Essential elements of a binding agreement include an offer, acceptance of that offer, and valuable consideration.  At common law, an acceptance had to be the "mirror image" of the offer, or it constituted a counteroffer that rejects the original offer.

The Georgia legislature has codified these principles in statutory form.  "The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition."  Ga. Code Ann. § 13-3-2 (1982).

As Plaintiffs have recognized, "[t]he exact terms of the agreement were never finalized as evidenced by Exhibit "D", the agreement as modified by Plaintiff's counsel."  Dkt. No. 166 at 5 n.1.  No "agreement" may be enforced where the essential terms of the agreement are uncertain and indefinite.  Panfel v. Boyd, 187 Ga. App. 639, 645-46 (1988); Coldmatic

AO 72A
(Rev. 8/82)

Refrigeration of Canada, Ltd. v. Hess, 257 Ga. App. 753, 756 (2002)(refusing to enforce an "agreement to agree").

In sum, because there was no meeting of the minds between the Bankruptcy Trustee and Plaintiffs, the motion to enforce the purported agreement is without merit.

## CONCLUSION

For the reasons explained above, Plaintiffs' motion to enforce settlement is **DENIED**. See Dkt. No. 166. Plaintiff's motion for a hearing on the motion, having been granted, is hereby **DISMISSED** as moot. See Dkt. No. 167.

**SO ORDERED**, this ___3___ day of November, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)